IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOSHUA PULAWA and SHIRLEY GABRIEL, | ) ) ) | Civ. No. 05-00159 ACK/KSC; Civ. No. 05-00209 ACK/KSC |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| FEDERAL RECOVERY SERVICES, INC. and STEVEN SMITH, | ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

**ORDER DENYING PLAINTIFF PULAWA'S MOTION FOR PARTIAL SUMMARY
JUDGMENT; DENYING PLAINTIFF GABRIEL'S MOTION FOR SUMMARY
JUDGMENT; AND GRANTING DEFENDANT FEDERAL RECOVERY SERVICES,
INC.'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS PENDENT
STATE CLAIMS WITHOUT PREJUDICE**

PROCEDURAL BACKGROUND

On March 7, 2005, Plaintiff Joshua Pulawa ("Pulawa")
filed a Complaint in the United States District Court for the
District of Hawaii seeking relief for violations of the Fair Debt
Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.,
Hawaii Revised Statutes governing Collection Agencies, H.R.S. §
443B et seq., and Hawaii Revised Statutes governing monopolies
and restraint of trade, H.R.S. § 480-2.  This case was docketed
Civ. No. 05-00159 ACK/KSC.

On March 24, 2005, Plaintiff Shirley Gabriel

("Gabriel") filed a Complaint in the United States District Court for the District of Hawaii seeking relief for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., and Hawaii Revised Statute governing Collection Agencies, H.R.S. § 443B et seq.. This case was originally docketed Civ. No. 05-00209 SOK/LEK.

On July 8, 2005, Defendant Federal Recovery Services, Inc. ("Defendant" or "Federal") filed an Answer to Pulawa's Complaint and an Answer to Gabriel's Complaint.

On December 21, 2005, the parties stipulated to consolidate cases Civ. No. 05-00159 ACK/KSC and Civ. No. 05-00209 SOM/LEK. The Gabriel case was redocketed as Civ. No. 05-00209 ACK/KSC.

On February 15, 2006, Defendant filed a Motion for Partial Summary Judgment With Respect To All Fair Debt Collection Practices Act Claims and For Dismissal Of State Law Claims alleged by Plaintiffs Pulawa and Gabriel ("Defendant's Motion"). Defendant also filed a Concise Statement of Facts in support of its motion ("Defendant's Motion CSF").

On February 15, 2006, Pulawa filed a Motion for Partial Summary Judgment on Counts 1-5 and 7-9 against Defendant ("Pulawa Motion"). Pulawa also filed a Concise Statement of Facts in support of its Motion ("Pulawa Motion CSF").

On February 15, 2006, Gabriel filed a Motion for

Summary Judgment on all counts of her complaint against Defendant ("Gabriel Motion").  Gabriel also filed a Concise Statement of Facts in support of her Motion ("Gabriel Motion CSF").

On March 2, 2006, Defendant filed a Declaration of Thomas Klc in support of its Motion ("First Klc Decl.").

On April 4, 2006, Defendant filed an Errata to Defendant's Motion CSF ("Defendant's Motion CSF Errata").

On April 5, 2006, Plaintiffs Pulawa and Gabriel filed a joint Opposition to Defendant's Motion ("Plaintiffs' Opposition").  Plaintiffs also filed a Concise Statement of Facts in support of their Opposition ("Plaintiffs' Opposition CSF").

Defendant filed a joint Opposition to Pulawa's Motion and Gabriel's Motion on April 6, 2006 ("Defendant's Opposition"). Defendant filed one Concise Statement of Facts in Opposition to the Pulawa Motion CSF ("Defendant's Opposition to Pulawa CSF") and another Concise Statement of Facts in Opposition to the Gabriel Motion CSF ("Defendant's Opposition to Gabriel CSF"). Defendant also filed a Hearsay Objection to evidence offered by Plaintiffs in support of their motions ("Defendant's Hearsay Objection").  On April 10, 2006, Defendant submitted the declarations of CEO Glen Bendixen ("Bendixen Decl.") and an employee supervisor named Tracey Campbell ("Campbell Decl.") in support of its Opposition to Gabriel's Motion.

On April 13, 2006, Defendant filed a Reply to

Plaintiffs' Opposition ("Defendant's Reply").  Defendant also filed a second declaration of Thomas Klc ("Second Klc Decl.") in support of its Reply on April 17, 2006.

Also on April 13, 2006, Pulawa filed a Reply to Defendant's Opposition ("Pulawa's Reply") along with a Concise Statement of Facts in support of his Reply ("Pulawa Reply CSF"). Gabriel filed a Reply to Defendant's Opposition ("Gabriel's Reply") and a Concise Statement of Facts in support of her Reply ("Gabriel's Reply CSF").

Plaintiffs have not submitted proof of service upon Defendant Steven Smith ("Steve"), a former employee of Federal Recovery Services, Inc., and Steve has not made an appearance in this case.[1]

On April 24, 2006, a hearing was held regarding Pulawa's Motion, Gabriel's Motion, and Defendant's Motions.

---

[1] When a plaintiff has not served a defendant with the complaint and summons within 120 days of filing the complaint, Federal Rule of Civil Procedure 4(m) allows a court "on its own initiative after notice to the plaintiff" to dismiss the action without prejudice.  However, as the ultimate findings in this Order regarding Plaintiffs' claims against Federal Recovery Services, Inc. would also support the dismissal of Plaintiffs' claims against Defendant Steve, the Court elects to apply the holdings contained in this Order to all claims against Steve.

## FACTUAL BACKGROUND[2]

On January 17, 2004, Joshua Pulawa, a 19 year old resident of Hawaii, joined Spa Fitness Center, Inc. ("Spa") located in Pearl City, Hawaii.  The cost of the membership was $520.  Pulawa signed a membership agreement and made a $40 down payment.  He also agreed to pay the remaining $480 balance over the course of the next 24 months in $20 monthly installments, starting April 1, 2004.  By the terms of the agreement, a $1 fee could be assessed for late payments.

At some time, between January 17, 2004 and April 13, 2004, Federal Recovery Systems, Inc. ("Defendant"), a Utah

_____

[2] The facts as recited in this Order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

Parties that oppose a motion for summary judgment are required to submit a "separate document containing a concise statement that: (1) accepts the facts set forth in the moving party's concise statement; or (2) sets forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated."  Local Rule 56.1(b).  "[M]aterial facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party."  LR 56.1(g).  Plaintiffs' Opposition CSF to Defendant's Motion does not specifically accept or deny the material facts set forth by Defendant.  Instead, Plaintiffs list their own set of material facts, some of which controvert Defendant's material facts.  Plaintiffs have also submitted Concise Statements of Facts in support of their Motions.  The Court does not consider the Defendant's entire statements of facts to be admitted, and will address any disputes as to material facts as they are pertinent throughout the Order. Material facts submitted by Defendant that are not controverted by Plaintiffs' facts or evidence will be deemed admitted for the purpose of disposing of these motions.

corporation, which also does business as Paramount Acceptance or Paramount Acceptance Corporation, obtained Pulawa's debt. Defendant specifically alleges that it obtained Pulawa's debt on January 21, 2004. (Defendant's Opposition to Pulawa CSF at 7, ¶ 2; Defendant's Opposition to Gabriel CSF at 8, ¶ 2 (citing Bendixen Decl. ¶¶ 10-11)).

On April 1, 2004, Pulawa missed his first installment payment pursuant to the terms of the membership agreement. On April 13, 2004, Defendant, under the name Paramount Acceptance, sent a notice to Pulawa that his account was past due. (Pulawa Motion CSF ¶ 2; Defendant's Opposition to Pulawa CSF ¶ 2). Defendant maintains a log of notes of all communication with each customer. (First Klc Decl. ¶ 16). The first entry date on Pulawa's note log is April 13, 2004, which reflects the creation and mailing of the reminder notice. (Defendant's Motion, Ex. B). Pulawa made a $20 payment at the Spa some time in April 2004. (Pulawa Motion CSF ¶ 4; Defendant's Opposition to Pulawa CSF ¶ 4). Federal sent another letter requesting payment to Pulawa on May 11, 2004. (Pulawa Motion CSF ¶ 5; Defendant's Opposition to Pulawa CSF ¶ 5). On June 4, 2004 and July 8, 2004, Defendant's employees Matt and Jenette spoke with Pulawa regarding his account. (Pulawa Motion CSF ¶¶ 6,7; Defendant's Opposition to Pulawa CSF ¶¶ 6,7). On July 16, 2004, Pulawa made a $63 payment by credit card satisfying his outstanding obligation under the

membership agreement.  (Pulawa Motion CSF ¶ 8; Defendant's
Opposition to Pulawa CSF ¶ 8).

On September 13, 2004, Jenette called Pulawa's
residence to discuss an overdue payment and left a message on the
machine.  Jenette then called Pulawa's work number.  Jenette did
not reach Pulawa, but spoke with his mother, Shirley Gabriel
("Gabriel").  Jenette would not give Gabriel details about the
nature of her call, and Gabriel "got mad."  (Pulawa Motion CSF ¶
9; Defendant's Opposition to Pulawa CSF ¶ 9).

On November 10, 2004, Paramount sent a letter to Pulawa
requesting payment of $404, the entire unpaid balance of his
debt.  (Pulawa Motion CSF, Ex. 14; Defendant's Opposition to
Pulawa CSF ¶ 10).  On December 14, 2004, Defendant's employee
Joseph called Pulawa's residence, but did not reach him.
Instead, he spoke with Gabriel.  At this time, Gabriel informed
Joseph that she had spoken with her son and he would work to pay
the debt.  In the meantime, Gabriel claimed she was going to send
a check for $25.  (Pulawa Motion CSF ¶ 13; Defendant's Opposition
to Pulawa CSF ¶ 13).  Gabriel did not send a payment at that
time.  (Defendant's Motion, Ex. C (Pay History for Josh Pulawa)).

On January 3, 2005, Federal sent Pulawa a letter
demanding that Pulawa pay $406 to satisfy his debt in full.
(Pulawa Motion CSF, Ex. 1; Defendant's Opposition to Pulawa CSF ¶
14).  This letter stated that Pulawa would "be responsible for

7

the increased collection costs" if he did not pay immediately.
Id. Defendant subsequently admitted that "increased collection
costs" may include "interest, late fees, attorney's fees, [and]
court costs." (Pulawa Motion CSF, Ex. 21 (Defendant's First
Amended Responses to Interrogatories) at 5). The letter also
stated that "the intent of the letter was to collect a debt."
(Pulawa Motion CSF, Ex. 1).

On January 26, 2005, Federal employee Steve called
Pulawa's residence and did not reach Pulawa, but spoke with
Gabriel. (Pulawa Motion CSF ¶ 15; Defendant's Opposition to
Pulawa CSF ¶ 15). Gabriel alleges that Steve stated that she and
Pulawa would be sued if they did not pay the full amount of the
debt in three months. Steve made an entry in the note record
that Gabriel claimed she was paying the balance, he told her that
Defendant was giving her three months to pay, she got upset, and
then he hung up the phone. (Pulawa Motion CSF, Ex. 11;
Defendant's Opposition to Pulawa CSF ¶ 15). Gabriel called
Defendant back fifteen minutes later and spoke with Tracey,
Steve's supervisor. Gabriel alleges that she reported that Steve
had made a threat to sue and complained about his rude remarks.
(Pulawa Motion CSF ¶¶ 16, 17). Tracey's notes of the
conversation show that she apologized and assured Gabriel that
she would speak to Steve. The notes also reflect that Gabriel
complained that Steve had threatened her. Tracey made no

8

notation regarding the specific nature of the threat.  Finally, the notes indicate that Gabriel stated she was going to talk to a lawyer about whether Steve could be sued.  (Pulawa Motion CSF, Ex. 11; D's Motion, Ex. B).

On January 27, 2005, Pulawa sent a letter to Federal disputing his debt and requesting verification of the debt.  This letter was sent by certified mail at a cost of $4.42 to Plaintiffs.  (Pulawa Motion CSF, Exs. 2-4).

Gabriel called Defendant on February 10, 2005 to inquire about Pulawa's account, but employee Dustin would not discuss Pulawa's account with her.  (Pulawa Motion CSF ¶ 23; Defendant's Opposition to Pulawa CSF ¶ 23).  On February 15, 2005, Defendant's employee Trevor called Pulawa's residence and failed to reach Pulawa, but spoke with Gabriel.  He told Gabriel that Pulawa was still obligated to pay after Gabriel made an excuse regarding the payments.  (Pulawa Motion CSF ¶ 24; Defendant's Opposition to Pulawa CSF ¶ 24.)

Pulawa sent a payment of $10 to Defendant on February 21, 2005.  Defendant sent a February 24, 2005 letter to Pulawa acknowledging the payment and requesting the outstanding balance of $371.  (Pulawa Motion CSF, Ex. 15).

On April 7, 2005, Gabriel called Defendant seeking information about her son's account and outstanding balance. Federal's Employee Connor noted that Gabriel said she would "get

9

back to" Defendant about the account.  (Pulawa Motion CSF ¶ 27;

Defendant's Opposition to Pulawa CSF ¶ 27).

Thomas Klc is Defendant's Secretary, Director, and

Treasurer.  He testified that Defendant receives a 5% commission

on all monies received as a result of its collection efforts.

(Pulawa Motion CSF ¶¶ 33, 34; Defendant's Opposition to Pulawa

CSF ¶¶ 33, 34).  Defendant has also admitted that it is not

registered as a debt collector in Hawaii.  (Pulawa Motion CSF,

Ex. 23 (Defendant's Response to Plaintiff's Interrogatory) at 3).

## STANDARD

### I.   Summary Judgment

The purpose of summary judgment is to identify and

dispose of factually unsupported claims and defenses.  See

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Summary

judgment is therefore appropriate when the "pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law."[3]  Fed. R. Civ. P.

56(c).

---

[3] Affidavits made on personal knowledge and setting forth
facts as would be admissible at trial are evidence that a court
may consider when determining whether a material issue of fact
exists.  Fed. R. Civ. P. 56(e).  Legal memoranda and oral
argument are not evidence and do not create issues of fact.  See
British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir.
1978).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A genuine issue of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[4] Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 310 F.3d 1188, 1194 (9th Cir. 2002) (quoting Union Sch. Dist. v. Smith, 15 F.3d 1519, 1523 (9th Cir. 1994)) (internal citations omitted). Conversely, where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party may do so with affirmative evidence or by "'showing'--that is pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Id. at 325. All evidence and reasonable inferences drawn therefrom are considered in the light most favorable to the nonmoving party. See, e.g., T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). So, too, the court's role is not to make credibility

---

[4] Disputes as to immaterial issues of fact do "not preclude summary judgment." Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1478 (9th Cir. 1986).

assessments.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied.   Id. at 250-51.

Once the moving party satisfies its burden, however, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.   See Celotex, 477 U.S. 322-23; Matsushita Elec., 475 U.S. at 586; Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).   Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv., 809 F.2d at 630.   The nonmoving party must instead set forth "significant probative evidence" in support.   T.W. Elec. Serv., 809 F.2d at 630. Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.[5]   See Celotex, 477 U.S. at 322.

---

[5] When the moving party also has the burden of proof in an element of a claim, it has the "burden of establishing a prima facie case on the motion for summary judgment."   UA Local 343 of the United Ass'n of Journeymen v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995).   Upon showing a prima facie case, the burden of production shifts and it becomes "incumbent on [the

**(cont.)**

## II.  **Motion To Dismiss: Supplemental Jurisdiction**

A district court may invoke supplemental jurisdiction:

[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  However, a court may decline to exercise supplemental jurisdiction over state claims when "the district court has dismissed all claims over which it had original jurisdiction."  28 U.S.C. § 1367(c)(3); see Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1143 n. 7 (9th Cir. 2003); Brown v. Lucky Stores, Inc., 246 F.3d 1182, 1189 (9th Cir. 2001). Generally, pendent state claims should be dismissed when the federal claims are dismissed before trial.  Matsuda v. Wada, 128 F. Supp. 2d 659, 671 (D. Haw. 2000) (citing Jones v. Community Redevelopment Agency, 733 F.2d 646, 651 (9th Cir. 1984)).  "The exercise of pendent jurisdiction to hear state claims is within the discretion of the federal district court."  Imagineering,

---

nonmoving party] to 'set forth specific facts showing that there is a genuine issue for trial,' by evidence cognizable under that rule."  Id. (quoting Fed. R. Civ. P. 56(e)); Charles Alan Wright et al., Federal Practice & Procedure § 2727 (3d ed. 1998).  The ultimate burden of persuasion as to the non-existence of any genuine issues of material fact remains on the moving party. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000); accord Dye v. United States, 121 F.3d 1399, 1409 (10th Cir. 1997).

<u>Inc. v. Kiewit Pacific Co.</u>, 976 F.2d 1303, 1309 (9th Cir. 1992)

(<u>citing</u> <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715,

726, 86 S.Ct. 1130, 1139 (1966)).  The court should consider

"values of economy, convenience, fairness, and comity" in making

this determination.  <u>Imagineering</u>, 976 F.2d at 1309; <u>Matsuda</u>, 128

F. Supp. 2d at 671.

### DISCUSSION

Plaintiffs' Pulawa and Gabriel have alleged 9 and 8

Counts respectively of violations of the Fair Debt Collection

Practices Act and the Hawaii Revised Statutes governing

collection agencies.  Defendant has moved for summary judgment on

all federal claims and asked the court to dismiss the state law

claims.  Pulawa has moved for summary judgment on Counts 1-5 and

7-9 of his Complaint, and Gabriel has moved for summary judgment

on all 8 Counts of her Complaint.  The Court will first address

Defendant's Motion for Partial Summary Judgment and Motion to

Dismiss.

### I.   **Defendant's Motion For Partial Summary Judgment On Federal Claims**

Defendant has moved for Partial Summary Judgment on

Plaintiffs' federal claims based on two provisions of the FDCPA.

Defendant alleges that it is not a debt collector pursuant to

FDCPA § 1692a(6)(F)(iii) and that even if it is a debt collector,

it cannot be liable as it is protected by the bona fide error

14

defense outlined in FDCPA § 1692k(c).

A.   <u>Defendant Is Not A Debt Collector</u>

The federal statutory definition of a debt collector excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due to another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person . . . ." 15 U.S.C. § 1692a(6)(F)(iii)(1998).  Defendant cannot be liable as a debt collector under the FDCPA if it obtained Pulawa's account prior to the date when the debt entered default.  <u>See</u> <u>Johnson v. Sallie Mae Servicing Corp.</u>, 102 Fed. Appx. 484, 487 (7th Cir. 2004); <u>Downs v. Clayton Homes, Inc.</u>, 88 Fed. Appx. 851, 853 (6th Cir. 2004);[6] <u>Schlosser v. Fairbanks Capital Corp.</u>, 323 F.3d 534, 538 (7th Cir. 2003); <u>Franchesi v. Mautner-Glick Corp.</u>, 22 F. Supp. 2d 250 (S.D.N.Y. 1998).

Pulawa joined Spa Fitness Center on January 17, 2004. (Defendant's Motion, Ex. A).  At this time, Pulawa paid $40 and agreed to pay $20 a month for the next twenty-four months.  <u>Id.</u> Defendant alleges that it obtained his debt on January 21, 2004. (Defendant's Opposition to Pulawa CSF at 7, ¶ 2; Defendant's Opposition to Gabriel CSF at 8, ¶ 2 (<u>citing</u> Bendixen Decl. ¶¶ 10-11)).  Defendant has provided a copy of Pulawa's membership

---

[6] The Court finds these unpublished decisions to be illustrative, although it is not relying on them as precedent.

agreement that is date-stamped January 21, 2004. (Defendant's Opposition to Gabriel CSF, Ex. J). Defendant alleges that it was customary to obtain all Spa accounts within three to five days of the execution of the membership agreement. (Defendant's Motion at 4; First Klc Decl. ¶¶ 6,7). Defendant states that it set up computer files to receive, track, and credit Pulawa's installment payments. (First Klc Decl. ¶ 13). Defendant also alleges that it sent a "welcome letter" and payment coupons to Pulawa prior to his first payment's due date. (First Klc Decl. ¶ 13). Both Bendixen and Klc have demonstrated through their declarations that they are officers and directors of Federal, and that they possess extensive knowledge of the company's practices. (Second Klc Decl. ¶¶ 3-10; Bendixen Decl. ¶¶ 2, 5, 19-22).

Plaintiffs have provided no direct evidence to controvert Defendant's allegation that it obtained Pulawa's account from Spa on January 21, 2004. It is true that in Defendant's October 20, 2004 Answer to Pulawa's Interrogatories, Defendant stated that Pulawa's "account was assigned for servicing on April 13, 2004." (Plaintiffs' Opposition CSF, Ex. 25). However, Klc later clarified that this answer was meant to indicate that Pulawa's account was first serviced with a reminder letter on April 13, 2004, not that Federal obtained the account on that date. (Plaintiffs' Opposition at 3). April 13, 2004 is also the first recorded entry for the Pulawa account in Federal's

16

computer note log.  (Defendant's Motion, Ex. B).  Defendant
explains that the note log does not originate until Defendant is
required to contact a customer regarding a delinquent payment.

Based on the evidence before the Court, the Court
concludes that Federal obtained the Pulawa account on January 21,
2004 as indicated by the date stamp affixed to Pulawa's
membership agreement.  This conclusion is supported by the
declarations of Klc and Bendixen, and is consistent with
Defendant's explanation of the customary debt assignment
practices between Spa and Federal.

It is undisputed that Pulawa's account was not in
default on January 21, 2004; and his debt could not have been in
default prior to April 1, 2004, when the first installment
payment was due.  Pursuant to the plain language of FDCPA §
1692a(6)(F)(iii), Federal is not a debt collector because it
obtained Pulawa's debt before it was in default.  The Court now
considers Plaintiffs' additional arguments that oppose a
determination that Federal is not a debt collector under the
FDCPA.

B.   <u>Defendant's Subsequent Actions Did Not Transform It Into A
     Debt Collector</u>

First, Plaintiffs allege that Defendant's conduct
should be governed by the FDCPA, even if it was not initially a
debt collector, because it transformed itself into a debt
collector through its conduct.  However, Plaintiffs' cited

17

authority does not support their position.   In <u>Alibrandi v. Financial Outsourcing Services, Inc.</u>, a debt collector ("North Shore") sent a letter to the plaintiff, Alibrandi, declaring that he was in default on a debt he owed to an automobile lessor.   333 F.3d 82, 83 (2nd Cir. 2003).   The lessor subsequently terminated its relationship with North Shore and contracted with Financial Outsourcing Services ("FOS") to service the account.   <u>Id.</u> at 83-84.   The lessor did not contract with FOS to be a debt collector. <u>Id.</u>   FOS, believing itself to be an account servicer, not a debt collector, sent a letter to Alibrandi regarding his debt.   The letter did not comply with the FDCPA requirements and Alibrandi sued FOS.   <u>Id.</u> at 84.

The court concluded that North Shore's original letter initiated the default status, and therefore Alibrandi's debt was in default when it was obtained by FOS.   <u>Id.</u> at 88.   As a result, FOS could not rely on the exception to the debt collector definition contained in FDCPA § 1692a(6)(F)(iii) as a defense. <u>Id.</u>

Plaintiffs contend that North Shore's letter to Alibrandi mirrors Federal's January 3, 2005 letter to Pulawa, thus Federal, like North Shore, should be treated as a debt collector.   However, nothing in the <u>Alibrandi</u> decision supports the proposition that a company, who obtains a debt before it enters default, loses the protection of the FDCPA §

1692a(6)(F)(iii) defense through its later conduct.  The court
did not assess whether North Shore's letter transformed it into a
debt collector.  It only concluded that North Shore's letter had
the effect of placing Alibrandi's debt in default.  North Shore
was not a party in the case and had no reason to assert the
exception defense.  While FOS did assert the FDCPA §
1692a(6)(F)(iii) defense, the court denied FOS's claim because
the debt was deemed in default when FOS obtained it, not because
FOS had transformed itself into a debt collector.

　　　Similarly, Plaintiffs' reliance on <u>Schlosser v.</u>
<u>Fairbanks Capital Corp.</u>, 323 F.3d 534 (7th Cir. 2003), is
misplaced.  In <u>Schlosser</u>, the defendant erroneously believed a
debt was in default upon obtaining it and conveyed this belief to
the consumer.  The court ruled that the defendant was estopped
from later asserting a FDCPA § 1692a(6)(F)(iii) defense upon
realizing that the debt had not actually entered default when it
was obtained.  <u>Id.</u> at 538-39.  There is no evidence that Federal
believed Pulawa's account to be in default when it obtained the
debt on January 21, 2004, or made such a representation to
Plaintiffs at that time.  To the contrary, Defendant alleges that
it knew that the debt was not in default because Pulawa had just
signed the membership agreement and he did not have a payment due
for over two months.  As the <u>Schlosser</u> court recognized, "[i]f
the loan is current when it is acquired, the relationship between

19

the assignee and the debtor is, for the purposes of regulating communications and practices, effectively the same as that between the originator and the debtor." Id. at 538.  Thus, Federal's status is comparable to that of the originator, and it is not subjected to liability under the FDCPA.

In more analogous circumstances, the Eastern District of Pennsylvania concluded that a party who obtained a debt before it was in default did not become a debt collector under the FDCPA based on its subsequent attempts to collect that debt.  Prince v. NCO Financial Services, Inc., 346 F. Supp. 2d 744, 751 (E.D. Pa. 2004).  In Prince, the court concluded that the defendant, NCO Financial Services, Inc., had obtained the plaintiff's debt before it was in default.  Id. at 750.  The plaintiff, Prince, argued that NCO could not rely on FDCPA § 1692a(6)(F)(iii) because NCO later sent him a letter that identified itself as a debt collector, stated that it was trying to collect a debt, and contained debt verification language consistent with the FDCPA statutory provisions.  However, the court concluded that a company's self-identification as a debt collector did not automatically make that company a debt collector under the FDCPA. Id. at 751.  The court also held that the statement "this is an attempt to collect a debt" did not equate to an admission that NCO was a debt collector pursuant to the FDCPA.  Id.

Here, while Defendant's January 3, 2005 letter to

20

Pulawa did include debt verification language and the statement that "the intent of the letter is to collect a debt," Defendant did not identify itself as a debt collector. (Defendant's Motion, Ex. F (January 3, 2005 letter)). Thus, there is even less evidence to support a finding that Federal should be considered a debt collector under the FDCPA than there was in Prince.

Plaintiffs have failed to provide a basis for adopting a rule contrary to the plain language of the FDCPA. The Court concludes that Defendant did not transform itself in to a debt collector as defined by the FDCPA.

C.   Defendant Did Not Become A Debt Collector By Allegedly Attempting To Collect Pulawa's Debt From Gabriel

Gabriel claims that whether Pulawa's debt was in default when Federal's employee Steve allegedly threatened to sue Plaintiffs is irrelevant to her federal claims. Gabriel's contention is premised upon the fact that the FDCPA grants protection to all persons, whether or not they have valid debts. Mathis v. Omnium Worldwide, 2005 WL 3159663, at *3 (D. Or. 2005) (concluding that a woman had standing to sue a debt collector for allegedly violating the Act in an attempt to get her to pay the debts of her deceased father); Dutton v. Wolhar, 809 F. Supp. 1130, 1134-35 (D. Del. 1992) (concluding that the Act is designed to protect all people from deliberate harassment by debt collectors, including those that do not owe any debt).

21

However, these cases only assess whether plaintiffs have standing to sue debt collectors.  The dispositive determination in the present case, that Federal is not a debt collector, obviates an inquiry into Gabriel's standing under the Act.  Gabriel correctly outlines the rights of potential claimants under the FDCPA, but fails to account for the requirement that the party accused of violating the Act must be a debt collector.  <u>Prince</u>, 346 F. Supp. 2d at 747 (quoting <u>Pollice v. Capital Asset Research Corp., Ltd.,</u> 225 F.3d 379, 403 (3d Cir. 2000)).  As the Court has previously discussed, Federal is not a debt collector as defined by the FDCPA with respect to its efforts to collect Pulawa's debt.  Gabriel's allegations are all related to Federal's attempt to collect that one debt.

For the foregoing reasons, the Court concludes that Defendant is not a debt collector and cannot be held liable under the FDCPA.  Thus, the Court grants Defendant's Motion for Partial Summary Judgment on Plaintiffs' federal claims.[7]

---

[7] Defendant has also presented the bona fide error defense, which states "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).  Having concluded that Federal is not a debt collector as defined by the Act, the Court need not address Defendant's alternative basis for summary judgment.

## II. __Defendant's Motion To Dismiss State Claims__

Defendant has also requested that the Court dismiss Plaintiffs' state claims pursuant to 28 U.S.C. § 1367(c)(3), which states that a court may decline to exercise supplemental jurisdiction over state claims when "the district court has dismissed all claims over which it had original jurisdiction." See Warren, 328 F.3d at 1143 n. 7; Brown, 246 F.3d at 1189. Generally, pendent state claims should be dismissed when the federal claims are dismissed before trial, but the determination remains within the discretion of the court. Matsuda, 128 F. Supp. 2d at 671 (citing Jones, 733 F.2d at 651); Imagineering, 976 F.2d at 1309. The court must balance considerations of economy, convenience, fairness, and comity in making its determination. Imagineering, 976 F.2d at 1309; Matsuda, 128 F. Supp. 2d st 671.

Plaintiffs seek relief pursuant to federal law, the Fair Debt Collection Practices Act, and state law, the Hawaii Revised Statutes governing collection agencies. The Court has original jurisdiction over the FDCPA claims and supplemental jurisdiction over the state claims. In granting summary judgment for Defendant on all federal claims before trial, it is standard practice for the Court to dismiss the pendent state claims. Many of the state claims involve undeveloped fact-specific issues and state law questions that would be appropriately resolved before a

state court.  There is also no reason to believe it would be unfair to Plaintiffs, who are both Hawaii residents, to adjudicate this matter in the state court.  It may be more convenient for Plaintiffs to proceed in this Court with the remaining claims, but this is not an adequate reason for the Court to maintain jurisdiction.  Therefore, the Court dismisses all of Plaintiffs' pendent state claims without prejudice to file those claims in state court.

**III.  Pulawa's Motion For Partial Summary Judgment and Gabriel's Motion For Summary Judgment**

In granting Defendant's Motion for Partial Summary Judgment, the Court denies Pulawa's Motion for Partial Summary Judgment on all federal counts and Gabriel's Motion for Summary Judgment on all federal counts.  In granting Defendant's Motion to Dismiss without prejudice, the Court does not address Pulawa's Motion for Summary Judgment on any of his state law claims and does not address Gabriel's motion for summary judgment on any of her state law claims.

**CONCLUSION**

For the foregoing reasons, the Court: (1) DENIES Plaintiff Pulawa's Motion For Partial Summary Judgment as it pertains to Counts 1-4, and DOES NOT ADDRESS Pulawa's Motion For Partial Summary Judgment as it pertains to Counts 5, 7, 8, and 9; (2) DENIES Plaintiff Gabriel's Motion For Summary Judgment as it

pertains to Counts 1-4, and DOES NOT ADDRESS Gabriel's Motion for

Summary Judgment as it pertains to Counts 5-8; (3) GRANTS

Defendant Federal Recovery Services, Inc.'s Motion For Partial

Summary Judgment and Motion to Dismiss Pendent State Claims

Without Prejudice.


      IT IS SO ORDERED.

      DATED: HONOLULU, HAWAII, April 28, 2006.




      _____
      Alan C. Kay
      Sr. United States District Judge


PULAWA V. FEDERAL RECOVERY SERVICES, INC., ET AL., CIV. NO. 05-
00159 ACK/KSC; CONSOLIDATED WITH GABRIEL V. FEDERAL RECOVERY
SERVICES, INC., ET AL., 05-00209 ACK/KSC, ORDER DENYING PLAINTIFF
PULAWA'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFF
GABRIEL'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANT
FEDERAL RECOVERY SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MOTION TO DISMISS PENDENT STATE CLAIMS WITHOUT PREJUDICE.